**George JANINI, et al., Appellants,**

v.

**KUWAIT UNIVERSITY, Appellee.**

No. 93–7135.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 10, 1994.

Decided Jan. 20, 1995.

Stephen M. Creskoff argued the cause for the appellants. Yousif Sulfab Ahmed and Adnan M. Waked entered appearances pro se.

Daniel B. Silver argued the cause for the appellee. On brief was Julie A. Waddell.

Before SENTELLE, HENDERSON and TATEL, Circuit Judges.

Opinion for the court filed by Circuit Judge KAREN LeCRAFT HENDERSON.

KAREN LeCRAFT HENDERSON, Circuit Judge:

The appellants, former employees of appellee Kuwait University (University), brought this action to recover damages allegedly flowing from the University's unilateral termination of their employment contracts. The district court dismissed the action on the ground that the University, as an arm of the Kuwaiti Government, is entitled to immunity under the Foreign Sovereign Immunity Act, 28 U.S.C. §§ 1330, 1602 *et seq.*, (FSIA) because the termination, which resulted from a Kuwaiti Government decree abrogating all contracts with non-nationals, was a "sovereign" act. Because we conclude the district court incorrectly characterized the abrogation decree, and its attendant termination of contracts, we vacate the order dismissing the action and remand. On remand the district court is to determine whether the University is otherwise entitled to sovereign immunity under the FSIA or, if not, whether the action should be dismissed on the alternative grounds asserted in the University's motion below.

The facts material to the single issue presented are largely undisputed. The three appellants were employed by the University when Iraq invaded Kuwait on August 2, 1990. Janini, the only appellant to submit briefs and participate in oral argument, is an American citizen who applied for a chemistry teaching position at the University in 1977, through the Kuwait University Office (KUO) located in Washington D.C. Janini was hired and taught at the University, under successive contracts, from September 1977 until the summer of 1991. His last employment contract was for a four-year term, beginning in 1989, and required nine months' notice be-fore termination. He was at his Maryland residence, on summer leave from the University, when Iraq invaded Kuwait in August 1990.

In early 1991 the Kuwaiti Council of Ministers issued a decree, drafted in Arabic, which provided in relevant part that "contracts concluded between the Government and those non-Kuwaiti workers who worked for it ... shall be considered automatically abrogated because of the impossibility of enforcement due to the Iraqi invasion which is considered to be a case of **force majeure**." Joint Appendix (JA) 208 (emphasis in certified translation). According to Janini, despite subsequent contact with the KUO, he was unaware of the decree until after he received a letter from the University dated August 21, 1991 informing him his "services as a chemistry professor were not needed." JA 97.

On January 14, 1993 Janini and 13 other former University employees commenced this action seeking pay and other benefits allegedly due on account of the contract termination. The University moved to dismiss for lack of subject-matter jurisdiction claiming, inter alia, it was entitled to sovereign immunity under the FSIA.[1] The plaintiffs countered that the University was not immune because the action fell within the commercial activity exceptions to the FSIA, 28 U.S.C. § 1605(a)(2). By memorandum and order dated March 31, 1993, the district court granted the University's motion on the sovereign immunity ground, reasoning that the plaintiffs' claims were "based upon" a sovereign act—the wholesale abrogation of all contracts between Kuwait and non-nationals—rather than commercial activity that might trigger the section 1605(a)(2) exceptions. On appeal Janini offers various arguments for reversal but we need address only the single issue decided by the district court: whether the challenged action is based upon sovereign, rather than commercial, activity and therefore outside the scope of the section 1605(a)(2) exceptions. We conclude that it is not.

---

1. The motion also sought dismissal based on the Act of State and forum non conveniens doctrines and on improper service.

■ The FSIA provides foreign governments with broad immunity from suit in United States courts:

### Immunity of a foreign state from jurisdiction

Subject to existing international agreements to which the United States is a party at the time of enactment of this Act a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter.

28 U.S.C. § 1604. Among the statutory exceptions to this immunity are three involving "commercial" activity, all invoked by the plaintiffs below:

(a) A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case—

. . . . .

(2) in which the action is based upon a commercial activity carried on in the United States by the foreign state; or upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States;

. . . .

28 U.S.C. § 1605(a)(2). On its face this language deprives a foreign state of its immunity only in an action based upon "commercial" activity or certain acts connected therewith. It cannot confer jurisdiction over a foreign state "where a claim rests entirely upon activities sovereign in character, . . . regardless of any connection the sovereign acts may have with commercial activity." *Saudi Arabia v. Nelson,* —— U.S. ——, —— n. 4, 113 S.Ct. 1471, 1478 n. 4, 123 L.Ed.2d 47 (1993). In reviewing the district court's decision, therefore, we must first identify those acts upon which the action is (or is not) based. Like the district court, we conclude the ac-

tion is based upon the termination of the employment contracts and not, as Janini has argued, upon any pre-employment negotiations or recruitment conducted in this country through the KUO.

In *Saudi Arabia v. Nelson,* the Supreme Court construed the phrase "based upon" in section 1605(a)(2) to "denot[e] conduct that forms the 'basis,' or 'foundation,' for a claim," and concluded it "is read most naturally to mean those elements of a claim that, if proven, would entitle a plaintiff to relief under his theory of the case." *Id.* at —— – ——, 113 S.Ct. at 1477–78. Applying this reading, the *Nelson* Court held that the plaintiff American couple's action for false imprisonment and assault in Saudi Arabia, allegedly inflicted on the husband by the government in retaliation for his reporting safety hazards at the Saudi hospital where he worked, did not come within subsection (a)(2)'s first clause as one "based upon" his recruitment and hiring in this country, even though the latter activity "led to the conduct that eventually injured" the plaintiffs. *Id.* at ——, 113 S.Ct. at 1478. Rather, the Court concluded, the action was based upon "torts" perpetrated abroad, namely Saudi Arabia's "intentional wrongs" and "negligent failure to warn," the acts that allegedly caused the injuries for which the plaintiffs sought compensation. *Id.* Similarly here, the action is based upon the conduct that caused the losses alleged, namely the termination of the employment contracts, and not upon pre-employment contact with the KUO in this country. *Cf. Goodman Holdings v. Rafidain Bank,* 26 F.3d 1143, 1145–46 (D.C.Cir.1994) (action to recover for nonpayment of funds due under letters of credit issued by Iraqi national bank held not "based upon" other Iraqi banking activities in this country).[2]

Having concluded that this action is based upon the termination of the plaintiffs' employment contracts, we next review the district court's crucial determination that the termination was a sovereign act not subject to section 1605(a)(2)'s commercial activity ex-

---

**2.** At this stage, it appears that the termination occurred entirely outside this country, precluding the plaintiffs' reliance on subsection (a)(2)'s second exception (for an "action ... based ...

upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere").

ceptions. For the following reasons, we reject that holding.

■ In deciding whether particular activity is sovereign or commercial we must ask "not whether the foreign government is acting with a profit motive or instead with the aim of fulfilling uniquely sovereign objectives" but "whether the particular actions that the foreign state performs (whatever the motive behind them) are the *type* of actions by which a private party engages in 'trade and traffic or commerce.'" *Republic of Argentina v. Weltover, Inc.*, —— U.S. ——, ——, 112 S.Ct. 2160, 2166, 119 L.Ed.2d 394 (1992) (quoting *Black's Law Dictionary* 270 (6th ed. 1990)) (emphasis in opinion). Thus, a state engages in commercial activity "where it exercises 'only those powers that can also be exercised by private citizens,' as distinct from those 'powers peculiar to sovereigns.'" *Nelson*, —— U.S. at ——, 113 S.Ct. at 1479 (quoting *Weltover*, —— U.S. at ——, 112 S.Ct. at 2166). "Put differently, a foreign state engages in commercial activity ... only where it acts 'in the manner of a private player within' the market." *Id.* (quoting *Weltover*, —— U.S. at ——, 112 S.Ct. at 2166). Applying this approach, the *Weltover* Court concluded that, in issuing bonds to restructure debt, Argentina had "participated in the bond market in the manner of a private actor" and therefore engaged in a "commercial activity," —— U.S. at —— —— ——, 112 S.Ct. at 2167–68, while the *Nelson* Court held that Saudi Arabia's alleged wrongful arrest, imprisonment and torture of the plaintiff husband constituted an abuse of the state's police power, the exercise of which is "peculiarly sovereign in nature," —— U.S. at ——, 113 S.Ct. at 1479. Kuwait's alleged misconduct here, like Argentina's in *Weltover*, is commercial activity that may be subject to the subsection (a)(2) exceptions.

■ Contrary to the district court's conclusion, there is nothing "peculiarly sovereign" about unilaterally terminating an employment contract. Private parties often repudiate contracts in everyday commerce and may be held liable therefor. *See generally* Restatement (Second) of Contracts ch. 10, topic 3 ("Effect of Prospective Non–Performance"). That the termination here may

have been accomplished by a formal decree of abrogation does not affect its commercial nature. Nor does Kuwait's characterization of the invasion as a "force majeure" which necessitated abrogation of all contracts with non-nationals. As we explained above, Kuwait's reasons for terminating the contracts are immaterial to our inquiry. *See Weltover*, —— U.S. at ——, 112 S.Ct. at 2167 ("[I]t is irrelevant why Argentina participated in the bond market in the manner of a private actor; it matters only that it did so."). So long as the act of termination is a commercial one, of the sort in which "private players" routinely engage—as we have found it to be—it is subject to the section 1605(a)(2) commercial activity exceptions.

We emphasize that we have not determined this action falls outside the immunity conferred by the Act. Many questions remain regarding the effect, if any, of the commercial activity exceptions. The district court decided and we have reviewed only one aspect of the immunity inquiry: whether this action is based upon "commercial" rather than "sovereign" activity. There remains the question whether the activity, which we conclude *is* commercial, was "carried on in the United States" or, if not, was either "an act performed in the United States in connection with a commercial activity ... elsewhere" or "an act outside the territory of the United States in connection with a commercial activity ... elsewhere" that "causes a direct effect in the United States." As the district court did not address these primarily factual issues, we must remand the case for further proceedings. *See Millen Indus., Inc. v. Coordination Council*, 855 F.2d 879 (D.C.Cir. 1988) (remanding case against foreign state for determination of jurisdictional facts under FSIA).

*So ordered.*