EMILIO M. GARZA, Circuit Judge,
dissenting:
The majority in Part III.A. holds that UAE’s actions — “its promises to pay” — did not constitute “commercial activity” under the commercial activity exception of the FSIA, 28 U.S.C. § 1605(a)(2). Because I believe that UAE and MCI’s alleged contract negotiations constituted “commercial activity” under the FSIA, I dissent.[1]
My disagreement with the majority opinion begins with its failure to address the burden of proof. Under the FSIA, “[o]nce *665 the defendant alleges that it is a ‘foreign state’, the plaintiff must produce some facts to show that the commercial activity exception to immunity applies, but the defendant retains the ultimate burden of proof on immunity.” Arriba Ltd. v. Petroleos Mexicanos, 962 F.2d 528, 533 (5th Cir.), cert. denied, 506 U.S. 956, 113 S.Ct. 413, 121 L.Ed.2d 337 (1992). In this case, UAE has the burden of proving that it is immune from suit under the FSIA. However, instead of analyzing whether UAE has met this burden, the majority opinion focuses solely on discrediting MCI’s arguments.
“The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose.” Republic of Argentina v. Weltover, Inc., 504 U.S. 607, 614, 112 S.Ct. 2160, 2166, 119 L.Ed.2d 394 (1992). The Court in Weltover emphasized that the “commercial activity” exception to the FSIA embodies the restrictive rather than the absolute view of foreign sovereign immunity. Id at 613, 112 S.Ct. at 2165. Pursuant to this restrictive theory, the Court held that “when a foreign government acts, not as regulator of a market, but in the manner of a private player within it, the foreign sovereign’s actions are ‘commercial’ within the meaning of the FSIA” Id at 614, 112 S.Ct. at 2166. The determinative factor is not whether the foreign government is acting to fulfill uniquely sovereign objectives. “Rather, the issue is whether the particular actions that the foreign state performs (whatever the motive behind them) are the type of actions by which a private party engages in ‘trade and traffic or commerce.’ ” Id. (quoting Black’s Law Dictionary 270 (6th ed. 1990)).
Applying this rule, the Weltover Court held that Argentina had “participated in the bond market in the manner of a private actor,” and therefore engaged in a “commercial activity,” when it issued bonds to restructure debt. Id at 615-19, 112 S.Ct. at 2167-68. Focusing on the nature of the Argentine government’s behavior, not its. purpose, the Court rejected the argument that the context in which the Argentine government created the bonds — to fulfill its obligations under a foreign exchange program designed to address a domestic credit crisis and to control the nation’s critical shortage of foreign exchange — made these bonds “sovereign” instead of “commercial” in nature. Id at 615, 112 S.Ct. at 2167. The Court stated that “it is irrelevant why Argentina participated in the bond market in the manner of a private actor; it matters only that it did so.” Id.[2]
Because the focus is on the nature of the foreign sovereign’s behavior, most contracts entered into by a foreign sovereign will fall within the commercial activity exception.[3] We have previously noted the commercial nature of the making or breaching of a contract. See Walter Fuller Aircraft Sales, Inc. v. Republic of Philippines, 965 F.2d 1375, 1386 (5th Cir.1992) (holding that the breach of a contract for the sale of aircraft is a commercial activity); United States v. Moats, 961 F.2d 1198, 1205 (5th Cir.1992) (“The negotiation of contracts, including entry into a settlement agreement, clearly is the type of act performed by private persons.”); Stena Rederi AB v. Comision de Contratos del Comite, 923 F.2d 380, 389 n. 11 (5th Cir.1991) (“A single contract or course of dealing executed within this nation’s boundaries typically will constitute commercial activity carried on in the United States.”).
Other circuits have also noted that a foreign government’s formation or breach of a *666 contract will typically constitute commercial activity. In Rush-Presbyterian-St. Luke’s Med. Ctr. v. Hellenic Rep., 877 F.2d 574 (7th Cir.), cert. denied, 493 U.S. 987, 110 S.Ct. 333, 107 L.Ed.2d 322 (1989), the Seventh Circuit stated that although “contracts for purchase or sale of goods or services are presumptively ‘commercial activities,’ ... certain contracts, although generally of a type in which a private person could enter, are by their nature governmental, since only a sovereign entity deals in the particular kind of goods or services.” 877 F.2d at 578. Examples of noncommercial contracts that the court cited included a contract to allow a private party a license to exploit the state’s natural resources and employment contracts between a state and its civil servants or military personnel. Id. at 578-79. In J (mini v. Kuwait University, 43 F.3d 1534, 1537 (D.C.Cir.1995), the D.C. Circuit held that the Kuwait University’s unilateral termination of employment contracts was a commercial activity, despite the fact that it was accomplished by a formal decree of abrogation as the result of the Iraqi invasion of Kuwait.
In this case, there is nothing sovereign about UAE’s behavior — the alleged making and breaching of a contract with MCI. This is simply a contract for services which UAE felt it was morally obligated to enter into. The fact that the telephone calls were unauthorized, or that UAE had a military training . agreement with the United States is irrelevant to the nature of UAE’s actions. UAE’s actions were not authorized by a power peculiar to a foreign state; the making and breaching of this contract was not the result of UAE’s exercise of its police powers or power over the state’s resources, or even its power over the military. Instead, any private person could have engaged in these actions.
For the foregoing reasons, I respectfully dissent from the majority opinion, and I would hold that UAE’s alleged making and breaching of a contract with MCI constituted “commercial activity” under 28 U.S.C. § 1605(a)(2).

. I concur in Part II and Parts III.B. and C. of the majority opinion.

. Applying Weltover, the Court in Saudi Arabia v. Nelson, 507 U.S. 349, 113 S.Ct. 1471, 123 L.Ed.2d 47 (1993) stressed that a state engages in commercial activity only when it exercises powers that can also be exercised by private citizens, as distinct from those powers that are peculiar to sovereigns. Id. at 360, 113 S.Ct. at 1479. Applying this logic, the Court held that Saudi Arabia’s alleged wrongful arrest, imprisonment and torture of the plaintiff constituted an abuse of the state's police power, the exercise of which is "peculiarly sovereign in nature.” Id.

. The legislative history of the FSIA specifically states that "a single contract, if of the same character as a contract which might be made by a private person,” is an example of the type of behavior that the "commercial activity” exception was designed to encompass. H.R.Rep. No. 1487, 94th Cong., 2d Sess. 16 (1976), U.S.C.C.A.N.1976, at 6615.