**MILLICOM INTERNATIONAL CELLULAR, S.A., Millicom Costa Rica, S.A., and Communicaciones Celulares, S.A., Plaintiffs,**

v.

**RÉPUBLIC OF COSTA RICA, Instituto Costarricense de Electricidad, and Radiografica Costarricense, S.A., Defendants.**

**Civil Action No. 96–315(RMU).**

United States District Court, District of Columbia.

Feb. 23, 1998.

Peter Jonathan Kahn, Martin C. Calhoun, Williams & Connolly, Washington, DC, for Millicom International Cellular, S.A., Millicom Costa Rica, S.A., Communicaciones Ceculares, S.A.

Christopher M. Curran, Charles N. Brower, White & Case, Washington, DC, for Republic of Costa Rica.

Christopher M. Curran, Lisa Lynn Hubbard, Charles N. Brower, White & Case, Washington, DC, for Instituto Costarricense de Electricidad, Radiografica Costarricense, S.A.

### MEMORANDUM OPINION

URBINA, District Judge.

**Granting Defendants' Renewed Motion to Dismiss the First Amended Complaint in Its Entirety; Denying Defendants' Motion for Leave to File Discovery Materials**

## I. Introduction

Three corporate entities brought suit against the Republic of Costa Rica, a Costa Rican instrumentality, and a corporate subsidiary of the Costa Rican instrumentality arising from alleged unlawful anti-competitive activity and other related misconduct in the Costa Rican cellular services market. The plaintiffs in this action are three foreign corporations that design, develop, install, and operate, cellular telephone systems in countries in Europe, Asia, Africa, and Latin America. Plaintiff Millicom International Cellular, S.A. ("Millicom International"),[1] a Luxembourg corporation, owns 70 percent of the shares of common stock of its Costa Rican subsidiary, Plaintiff Millicom Costa

---

1. Plaintiff Millicom International Cellular, S.A. is the result of (i) a 1990 business combination between Millicom, Incorporated ("Millicom, Inc.") and Industriforvaltnings AB Kinnevik, and (ii) a 1993 merger and corporate reorganization that created MIC–USA as the successor by merger to Millicom, Inc. First Amended Complaint ("First Am. Compl.") at ¶ 5. Unless stated otherwise, the term "Millicom International" shall include plaintiffs Millicom International Cellular, S.A., and a predecessor in interest Millicom, Inc.

Rica, S.A. ("MCR"). Plaintiff Communicaciones Celulares, S.A. ("Comcel"), another corporation organized under the laws of Costa Rica, owns 25 percent of the shares of MCR's common stock. The defendants in this action are the Republic of Costa Rica, Instituto Costarricense de Electricidad ("ICE"), and Radiografica Costarricense, S.A. ("Radiografica"). Defendant ICE is an agency or instrumentality of the Costa Rican government that controls the public land-line based telephone services market in Costa Rica. Defendant Radiografica, a Costa Rican corporation wholly owned by defendant ICE, provides telecommunications and data transmission services within Costa Rica and to the United States.

This matter comes before the court upon the defendants' renewed motion to dismiss the amended complaint in its entirety.[2] The defendants submit that the plaintiffs' claims are barred by the Foreign Sovereign Immunities Act of 1976 ("FSIA"), 28 U.S.C. §§ 1330, 1602 et seq., the Act of State Doctrine, Fed.R.Civ.P. 12(b)(6), and the doctrine of forum non conveniens. The plaintiffs contend that two jurisdictional exceptions to the FSIA apply, and therefore the defendants are amenable to suit. Upon consideration of the parties' submissions and the relevant law, the court dismisses the plaintiffs' amended complaint because none of the FSIA jurisdictional exceptions confers jurisdiction over the plaintiffs' suit.

## II. Background

In December 1987, Comcel obtained a license from the Radio Control Office of Costa Rica's Ministry of Government authorizing it to use certain radio frequencies to operate a cellular telephone system in Costa Rica.

First Amended Complaint ("First Am. Compl.") ¶ 25. After receiving the license, Comcel entered into a joint venture agreement with MCR to develop, install, and operate a cellular telephone system in Costa Rica. See id. ¶ 26. In September 1988, before proceeding with the development of the cellular telephone system, Millicom, Inc., sought the assistance of the Costa Rican government to obtain insurance for its investment. See id. ¶ 27. Specifically, Millicom, Inc., requested the Director General of Industry (at the Costa Rican Ministry of Economy, Industry, and Commerce) to assist it in obtaining insurance from the Overseas Private Investment Corporation ("OPIC")[3] by sending a letter to the U.S. Embassy in Costa Rica approving the proposed cellular telephone system. See id. On October 20, 1988, the Director General of Industry sent a letter to the U.S. Embassy in Costa Rica stating that the Costa Rican government had no objections to the proposed investment. See id. ¶ 28. After the Costa Rican government did not object to the proposed investment, the OPIC approved Millicom, Inc.'s insurance application. See id. ¶ 29. Subsequently in 1992, the Costa Rican government assisted Millicom International and MCR in obtaining financing from the International Finance Corporation ("IFC")[4] when they tried to expand their cellular network. See id. ¶ 39. The IFC and MCR entered into an investment agreement whereby the ITC acquired preferred shares in MCR in return for a $6 million line of credit. See id. In May 1989, Millicom International and MCR began providing cellular telephone service to its first subscribers. See id. ¶ 40.

In September 1991, ICE publically announced that it was developing its own cellu-

---

**2.** On August 18, 1997 this court denied defendants' original motion to dismiss without prejudice on the grounds that the plaintiffs were entitled to conduct preliminary discovery in resolving whether this court had subject matter jurisdiction under the Foreign Sovereign Immunities Act of 1976, 28 U.S.C. §§ 1330, 1602 et seq., over plaintiffs' claims. After a brief period of discovery the defendants' filed a renewed motion to dismiss the complaint in its entirety on October 10, 1997.

**3.** OPIC is a corporation organized under the laws of the District of Columbia, with its head-

quarters in Washington, D.C. OPIC is an agency of the United States government, operating under the policy guidance of the State Department. First Am. Compl. at ¶ 30.

**4.** The IFC is a corporation organized under the laws of the District of Columbia, with its headquarters in Washington, D.C. First Am. Compl. ¶ 34. The IFC is a major international lending institute which makes development loans in a large number of countries throughout the world. International Finance Corp. v. GDK Sys., 711 F.Supp. 15, 17 (D.D.C.1989).

lar telephone system. *See id.* ¶ 47. Shortly thereafter, the plaintiffs claim that they became the target of anti-competitive behavior. As part of ICE's alleged "plan to drive plaintiffs out of the Costa Rican cellular telephone services market," ICE's labor union filed an action in the Constitutional Chamber of Costa Rica's Supreme Court challenging the constitutionality of the 1987 grant of license to Comcel. *See id.* ¶¶ 47, 49. On October 6, 1993, the Costa Rican Constitutional Court ruled that the grant of the radio frequencies to Comcel was unconstitutional and therefore void. *See id.* ¶ 51. The Court, however, stayed the effect of the ruling until May 9, 1995, in order to protect rights acquired in good faith by affected third parties. *See id.* Although the Court's ruling did void the license given to Comcel, it did not conclude that only one entity could provide cellular services and completely preclude Millicom International, Comcel or MCR from participating in the Costa Rican market. *See id.* ¶ 52. Accordingly, Millicom International made various attempts with the Costa Rican government to reach an agreement by which Millicom and MCR could continue to compete in the Costa Rican cellular services market in a manner consistent with the Constitutional Court's ruling. *See id.* ¶¶ 59–62. These efforts included a possible Costa Rican legislative solution and/or a joint venture between Millicom International/MCR and Radiografica. *See id.* ¶ 63. After an arrangement was reached, the parties signed a Letter of Intent on April 12, 1995, agreeing to use their best efforts to effectuate the signing of the contract containing the negotiated clauses. *See id.* ¶ 64.

During the negotiations with the Costa Rican government and Radiografica, Millicom International alleges that the ICE and its unions continued their efforts to monopolize the cellular services market by seeking to prevent Millicom International from entering the market in any capacity. *See id.* ¶ 53. In November 1993, ICE's engineers' union ("union") went on strike to prevent legislation from being presented to Costa Rica's National Assembly that would have authorized Millicom International's continued participation in the cellular services market. *See id.* ¶ 54. Also, as part of its alleged

attempt to monopolize the cellular services market, ICE sought written agreements from heads of political parties represented in the Costa Rican National Assembly that they would not pass any such legislation if it were to be presented to the National Assembly. *See id.*

As the May 10, 1995 deadline set by the Costa Rican Constitutional Court approached, the union went on strike to protest the Letter of Intent signed by Radiografica, the Costa Rican government and Millicom International. *See id.* ¶ 67. On May 11, 1995, with the union still on strike, the Costa Rican government suggested to Millicom International and MCR to enter into a contract with ICE instead of Radiografica as an interim solution which could advance the interests of all the affected parties. *See id.* ¶ 74. Millicom International provisionally agreed to contract with the ICE instead only if the terms were to be the same as those set forth in the Letter of Intent signed by Radiografica. *See id.* During subsequent negotiations between Millicom International, MCR, and ICE could not reach terms agreeable to both parties and on May 16, 1996, the Costa Rican government through its President announced the termination of all present and future negotiations between the parties. *See id.* ¶ 76. As a result of the defendants' conduct, the plaintiffs were in default of the investment agreement with the IFC and consequently had to pay back the $2 million dollar loan. *See id.* ¶ 78. Furthermore, the plaintiffs allege that after the defendants forced their cellular network off the air, ICE entered into an agreement with U.S. telecommunications companies to provide cellular service to subscribers in Costa Rica. *See id.*

Millicom International brings suit against the defendants based on the following causes of action: (i) monopolization in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2; (ii) monopolization by denial of access to an essential facility in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2; (iii) conspiracy to monopolize in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2; (iv) conspiracy to restrain trade in violation of Section I of the Sherman Act, 15 U.S.C. § 1; (v) breach of contract; (vi) promissory estoppel;

(vii) unlawful expropriation of aliens' property in violation of the Alien Tort Act, 28 U.S.C. § 1350; and (viii) tortious interference with prospective economic advantage. Millicom seeks damages from the defendants in excess of $134 million—trebled pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, and in an amount to be established at trial—plus interest, attorneys' fees, expenses, and costs.

## III. Analysis

### A. Applicability of the FSIA

■ Whenever the court is presented with a suit against a foreign state, the court must initially determine whether it has jurisdiction to hear the case. The FSIA "provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 443, 109 S.Ct. 683, 102 L.Ed.2d 818 (1989). The FSIA presumes a foreign state is immune from suit in United States courts except as provided in one of the statutory exceptions. *See Saudi Arabia v. Nelson*, 507 U.S. 349, 355, 113 S.Ct. 1471, 123 L.Ed.2d 47 (1993) ("Under the Act, a foreign state is presumptively immune from the jurisdiction of United States courts; unless a specified exception applies, a federal court lacks subject-matter

jurisdiction over a claim against a foreign state"). Exceptions to this immunity exist for cases dealing with waiver of immunity, 28 U.S.C. § 1605(a)(1); certain commercial activities, 28 U.S.C. § 1605(a)(2); expropriation of certain types of property, 28 U.S.C. § 1605(a)(3); cases concerning rights to immovable property situated in the United States, 28 U.S.C. § 1605(a)(4); actions based in tort, 28 U.S.C. § 1605(a)(5); or admiralty claims, 28 U.S.C. § 1605(b).

■ The plaintiffs argue that the FSIA's statutory exceptions defeat the defendants' immunity claims to give this court jurisdiction over the present action. In particular, the plaintiffs allege that the defendants are not entitled to foreign sovereign immunity because two of the FSIA's exceptions to immunity apply: (i) the commercial activity exception, 28 U.S.C. § 1605(a)(2); and (ii) the expropriation exception, 28 U.S.C. § 1605(a)(3). Neither of the FSIA jurisdictional exceptions cited by the plaintiffs is meritorious and defeats the defendants' immunity claim. Therefore, for the reasons stated herein, the present action is dismissed because the FSIA does not confer upon this court subject-matter jurisdiction over this action.[5] The court will address each FSIA statutory exception in turn.

---

5. In this action the parties do not dispute that defendants Republic of Costa Rica and ICE are presumptively immune within the meaning of the FSIA. The parties dispute whether defendant Radiografica, a Costa Rican corporation wholly owned by ICE, is also afforded presumptive immunity under the FSIA. The FSIA confers immunity to "foreign states" which include "a political subdivision of a foreign state and an agency or instrumentality of a foreign state." 28 U.S.C. § 1603(a). Section 1603(b) in relevant part defines "agency or instrumentality" of a foreign state as any entity whose shares are majority owned by a "foreign state or political subdivision thereof." The plaintiffs assert that since defendant Radiografica is a subsidiary of a Costa Rican "agency or instrumentality" it does not qualify as an "agency or instrumentality" of a foreign state as defined in 28 U.S.C. § 1603(b), and is therefore beyond the protections of the FSIA. Plaintiffs' Opposition to Defendants' Motion to Dismiss ("Opp.") at 27 (relying on *Gates v. Victor Fine Foods*, 54 F.3d 1457 (9th Cir.1995)). The plaintiffs argue that expanding Section 1603(b) to confer FSIA immunity to subsidiaries owned by "agencies or instrumentalities" would provide

potential immunity for every subsidiary in a corporate chain, so long as the first corporation was a foreign state or political subdivision thereof. *Id.*

This Circuit has already rejected the plaintiffs' narrow statutory interpretation of Sections 1603(a) and (b) in *Gilson v. Republic of Ireland*, 682 F.2d 1022 (D.C.Cir.1982). In *Gilson*, the D.C. Circuit held that a wholly owned entity by an instrumentality of the government of the Republic of Ireland was presumptively immune under the FSIA. *Id.* at 1026 n. 19. Additionally, the plaintiffs' "infinite looping" argument is contradictory to the language in Section 1603(a). The plain language of Section 1603(a) defines "foreign state" broadly. *In re Air Crash Disaster Near Roselawn, Indiana on October 31, 1994*, 96 F.3d 932, 940 (7th Cir.1996). Section 1603(a) defines "foreign state" to "include" an "agency or instrumentality of a foreign state." Therefore consistent with the broad statutory language of Section 1603(a), an entity that is majority owned by a "foreign state" "includes" an entity majority owned by "an agency or instrumentality of a foreign state." *Id.* (citation omitted). This interpretation is consistent with the legislative intent

### 1. "Commercial Activity" Exception, 28 U.S.C. § 1605(a)(2)

The FSIA "commercial activity" exception confers U.S. courts jurisdiction and denies immunity to a foreign state and its agencies or instrumentalities when the action:

is based upon (clause one) a commercial activity carried on in the United States by the foreign state; or (clause two) an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or (clause three) an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States.

28 U.S.C. § 1605(a)(2). Thus in order to have subject matter jurisdiction under clause one the court must find that the plaintiffs' action is based upon a commercial activity carried on in the United States by the foreign state. In order to find subject matter jurisdiction under clause two the court must find (1) plaintiffs' action is based upon an act performed in the United States, and (2) that it was taken in connection with a commercial activity of the defendants. Finally, under clause three the court can have subject matter jurisdiction if it finds that plaintiffs' action is (1) based upon an act outside the territory of the United States, (2) that was taken in connection with a commercial activity of the defendants outside of this country, and (3) that caused a direct effect in the United States. *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 611, 112 S.Ct. 2160, 119 L.Ed.2d 394 (1992).

### a. Clauses One and Two—"Commercial Activity" in the U.S.

■ Plaintiffs allege that clauses one and two confer this court jurisdiction because their claims are based on the defendants' commercial activity that have "substantial

contact" with the United States.[6] *See* 28 U.S.C. § 1603(d). In particular, the plaintiffs allege that because the "defendants own and operate a network of cables, wires, and satellite links that literally connects Costa Rica and the U.S." they control all cellular calls to and from the U.S. *See* Opp. at 19–20. The plaintiffs argue that their anti-trust claims all focus on this activity because without access to facilities essential to complete calls to and from the U.S., the defendants' misconduct secures their monopoly power and stifles the plaintiffs' efforts to compete in that market. *Id.* at 20. The court disagrees and rejects the plaintiffs' jurisdictional argument.

The first two clauses do not defeat the defendants' immunity claims because the plaintiffs' action is not "based upon" any misconduct committed by the defendants in the United States. § 1605(a)(2). The court previously rejected the plaintiffs' argument that the defendants' interconnectivity arrangements are a basis of their action. As this court stated in its discovery order,

"[e]ach of the plaintiffs' claims relates to the defendants' acts taken with regard to the cellular services market in *Costa Rica*. The fact that the defendants have arranged for interconnectivity between Costa Rica and the United States does not make that arrangement an 'element[ ] of a claim that, if proven, would entitle a plaintiff to relief under his theory of the case.' *Saudi Arabia v. Nelson*, 507 U.S. 349, 356, 113 S.Ct. 1471, 123 L.Ed.2d 47 (1993). While the *extent* of Millicom's alleged injury is directly related to its inability to transfer calls to the United States, that injury was *caused* solely by its lack of access to the Costa Rican network."

*Millicom International Cellular, S.A., v. Republic of Costa Rica*, Civil Action No. 96–315 (D.D.C. August 1996) ("Mem.Order") at 10.

---

to have Section 1603(a)'s definition of "foreign state" apply to all provisions of the FSIA except for Section 1608. *Id.* (*citing* 1976 U.S.S.C.A.N. at 6613). Accordingly, defendant Radiografica is entitled to presumptive immunity under the FSIA.

Furthermore, even if Radiografica did not qualify as an "agency or instrumentality of a foreign state" under Section 1603(b), the sole breach of

contract claim against it would be properly dismissed pursuant to 28 U.S.C. § 1367. The court concludes that exercising supplemental jurisdiction over Radiografica would not serve the principles and interests underlying the FSIA and the doctrine of supplemental jurisdiction.

**6.** Defendant's Motion to Dismiss ("Def.'s Mem.") at 19.

After the limited discovery period, the plaintiffs have still failed to demonstrate any anti-competitive conduct or unlawful commercial acts "carried on in the United States" to qualify under clause one of the "commercial activity" exception. § 1605(a)(2). Additionally, the plaintiffs similarly have failed to demonstrate that the defendants' interconnectivity arrangements were carried out "in connection" with any commercial activity in Costa Rica within the meaning of clause two of Section 1605(a)(2). *Id.*

The plaintiffs brought this action because the defendants' "wrongful conduct forced plaintiffs' cellular telephone system off the air and prevented the plaintiffs from competing in the Costa Rican cellular services market." First Am. Compl. at ¶ 1. Not one of the plaintiffs' claims is based upon the subsequent interconnectivity arrangements the defendants made between Costa Rica and the United States. These arrangements are merely incidental both to the plaintiffs' access to the cellular network in Costa Rica as well as the claims upon which the plaintiffs seek relief. Any such interconnectivity arrangements did not materially cause the plaintiffs' injuries and are not causally connected with the alleged misconduct in Costa Rica. *See Gilson v. Republic of Ireland,* 682 F.2d 1022, 1027 n. 22 (D.C.Cir.1982) (plaintiffs must demonstrate "direct causal connection" between the defendants' domestic acts and the foreign commercial activity to qualify under clause two of the "commercial activity" exception) (citations omitted). Also, accepting the plaintiffs' basis for asserting jurisdiction over a foreign state would contravene the principle of foreign sovereign immunity embodied in the FSIA. As stated previously, such acts are not the type of commercial activity contemplated by the FSIA's exceptions because "virtually any foreign telecommunications agency could be subject to suit by a foreign plaintiff in federal court so long as the action is related to network access." Mem. Order at 10 n. 7. Thus, the interconnectivity arrangements plaintiffs cite as a basis for jurisdiction under the first two clauses of the "commercial activity" exception are misplaced because such arrangements are legally irrelevant to recover judgment for antitrust, breach of contract, expropriation, and business interference claims.

### b. Clause Three—"Direct Effect" in the U.S.

As stated above, the third clause of the "commercial activity" confers this court with jurisdiction over actions (1) based upon an act outside the United States, (2) taken in connection with the defendants' commercial activity and (3) causes a direct effect in the United States. *See* § 1605(a)(2); *Weltover,* 504 U.S. at 611 (1992). The parties do not disagree that the plaintiffs' claims are based, in part, on acts occurring outside the United States, including, *inter alia,* the defendants' alleged anti-competitive conduct and breach of contract. The parties, however, disagree whether the second and third prongs of the "direct effects" clause are applicable to the defendants' conduct. The defendants argue that the FSIA's "commercial activity" exceptions do not apply to the Republic of Costa Rica because the plaintiffs' claims are "based upon" conduct by the Republic of Costa Rica that qualifies as "sovereign" and not "commercial" acts. *See* Def.'s Mem. at 18–19. The defendants also contend that the plaintiffs' action is not "based upon" any alleged conduct causing a "direct effect" in the United States because any acts had "direct effects" solely in Costa Rica. *Id.* at 13.

### (i) The Republic of Costa Rica's conduct qualifies as "commercial activity" under the FSIA.

■ The defendants do not challenge the plaintiffs' assertion that ICE and Radiografica engaged in "commercial activity" for the purpose of Section 1605(a)(2), but contend that none of the Republic of Costa Rica's actions constituted "commercial activity." In determining whether a foreign state's conduct constitutes "commercial activity" the court is to examine the "nature" rather than the "purpose" of the activity under scrutiny. *See* 28 U.S.C. § 1603(d). The proper inquiry focuses not on "whether the foreign government is acting with a profit motive or ... with the aim of fulfilling uniquely sovereign objective[s]," but "whether the particular actions that the foreign state performs (whatever the motive behind them) are the type of

actions by which a private party engages in 'trade and traffic or commerce.'" *Weltover*, 504 U.S. at 614. Thus, a state engages in "commercial activity" when it exercises only those powers that can also be exercised by private citizens, as distinct from those powers peculiar to sovereigns. *Janini v. Kuwait University*, 43 F.3d 1534, 1537 (D.C.Cir. 1995).

█ The defendants argue that the alleged conduct qualified as "sovereign" because the regulation of a limited state resource (radio waves) represented Costa Rica's role as "a regulator of a market" rather than "a private player within it." *See* Opp. at 19. Contrary to the defendants' assertion, the court concludes this conduct does constitute "commercial activity," within the meaning of the FSIA. The inherently commercial "nature" of Costa Rica's conduct is confirmed by the fact that it is one in which private players do commonly engage when providing services to a particular market. § 1605(a)(2). The Republic of Costa Rica did not exercise uniquely sovereign powers when it negotiated a contract with the plaintiffs, facilitated investment in the proposed cellular business, and when it allegedly monopolized the cellular services market. The "outward form" of Costa Rica's conduct is no different from the "type of actions by which a private player engages in 'trade and traffic or commerce.'" *See Weltover*, 504 U.S. at 614 (1992) (citations omitted). Therefore, the Republic of Costa Rica's conduct is subject to the FSIA's "commercial activity" exceptions because the plaintiffs' claims are "based upon" commercial conduct when Costa Rica acted as a "private player" in the developing the cellular services market. *Id.*

### (ii) The Defendants' conduct did not have a "direct effect" in the United States

█ Next, the plaintiffs argue that the defendants' acts caused numerous "direct effects" in the United States. Specifically, the plaintiffs allege the defendants' unlawful conduct prevented phone calls between the United States and Costa Rica using the plaintiffs' cellular telephone system from being made and caused them to be made over ICE's cellular system instead. *See* Opp. at 15. The plaintiffs also allege additional "direct effects" occurred when the Costa Rican government made representations and certain assurances to the plaintiffs in the United States about developing the proposed cellular telephone system. *Id.* at 15–17. The plaintiffs maintain they would not have invested in its development, including obtaining OPIC insurance and IFC loans, and consequently be obligated to repay funds to an IFC bank account in New York when the defendants' misconduct caused a default under the investment agreement with the IFC. *Id.*

None of the defendants' alleged wrongful acts had a "direct effect" in the United States because the defendants' conduct did not have an "immediate consequence" in the United States. *See Weltover*, 504 U.S. at 618 (an effect is "direct" only if it follows as an "immediate consequence of the defendant's activity"). The assertion that the defendants caused a "direct effect" because they prevented calls between and the United States and Costa Rica from being made using the plaintiffs' cellular network is unpersuasive. § 1605(a)(2). The "immediate consequence" of being denied access to cellular lines in Costa Rica is the plaintiffs' inability to compete in that market. *Weltover*, 504 U.S. at 618. It is a legally insufficient basis to confer jurisdiction under this clause because the defendants prevented calls between the United States and Costa Rica using the plaintiffs' cellular system. A closer nexus is required because the plaintiffs' argument would confer jurisdiction over any foreign state if the action involved any change in a foreign communication system that affected the routing of a foreigner's communication with the United States. Such an interpretation of the FSIA's immunity provisions ignores the direct relationship needed between the United States and the foreign state's conduct to confer jurisdiction under this clause. *See Weltover*, 504 U.S. 607, 112 S.Ct. 2160, 119 L.Ed.2d 394 (foreign state's rescheduling of bond maturity dates had a "direct effect" in the U.S. because New York was the required place of performance for foreign state's contractual obligations under such bonds); *see also Goodman Holdings v. Rafidain Bank*, 26

F.3d 1143 (D.C.Cir.1994) (failure to honor letters of credit did not have "direct effect" within the meaning of the FSIA because the United States was not designated as "place of performance" of contract). Therefore, any calls that defendants allegedly prevented from being made between the U.S. and Costa Rica using the plaintiffs' cellular telephone system did not have any "direct effect" in the United States. § 1605(a)(2).

The plaintiffs' other allegations also fail to establish "direct effects" under this clause. *Id.* Any assurances or representations the Costa Rican government made to the plaintiffs in the United States about developing a cellular network and consequences therefrom did not have any "direct effects" within the meaning of the FSIA. The defendants' alleged breach of the April 12, 1995 Contract did not have "direct effects" in the U.S. because the contract did not require ICE and Radiografíca to fulfill their respective contractual obligations in the United States. *See Weltover,* 504 U.S. 607, 112 S.Ct. 2160, 119 L.Ed.2d 394; *Goodman,* 26 F.3d 1143; *Zedan v. Kingdom of Saudi Arabia,* 849 F.2d 1511 (D.C.Cir.1988). A contract claim based upon a breach constitutes a "direct effect" if the foreign state breached obligations that the foreign state itself was required to perform in the United States. *Id.* The April 12, 1995 Contract that would have enabled the plaintiffs "to compete in the Costa Rican cellular services market" had its "place of performance" in Costa Rica rather than the United States. First Am. Compl. at 64. Likewise, the plaintiffs' promissory estoppel claim fails to establish "direct effects" in the United States because the place of fulfillment of the government's assurances and representations about developing a cellular telephone business would be in Costa Rica and not the United States. *See Weltover,* 504 U.S. 607, 112 S.Ct. 2160, 119 L.Ed.2d 394; *Goodman,* 26 F.3d 1143.

Additionally, the plaintiffs cannot rely on any repercussion felt by their shareholders and creditors to establish "direct effects" under this clause because any derivative harm would be too indirect to qualify as an "immediate consequence" of the defendants' conduct. *Weltover,* 504 U.S. at 618. The plain-tiffs' separate contractual obligations to the IFC and OPIC did not cause "direct effects" in the United States because mere financial loss due to commercial activity abroad is not, in itself, sufficient to form a "direct effect." *Antares Aircraft v. Federal Republic of Nigeria,* 999 F.2d 33, 36 (2d Cir.1993); *Adler v. Federal Republic of Nigeria,* 107 F.3d 720, 726–727 (9th Cir.1997). Here, any consequences of the defendants' conduct affected only the plaintiffs' obligations to third parties and therefore cannot constitute the legally significant acts to cause a "direct effect" in the United States. *See Antares Aircraft; Southern Seafood Co. v. Holt Cargo Systems, Inc.,* 1997 WL 539763 (E.D.Pa.). Also any insurance payments made to OPIC cannot constitute an "immediate consequence" of representations the Costa Rican government made in regard to the proposed investment. *Weltover,* 504 U.S. at 618. OPIC was under no compulsion to issue insurance to the plaintiffs because the letter sent by the Costa Rican government only indicated it did not object to the proposed investment and no restrictions existed to the development of the cellular network in Costa Rica. First Am. Compl. at ¶ 28. Accordingly, the defendants are not denied FSIA immunity because the effect of their commercial activity in Costa Rica did not have a "direct effect" in the United States. § 1605(a)(2).

## 2. "Expropriation" Exception— 28 U.S.C. § 1605(a)(3)

The FSIA confers jurisdiction under the "expropriation" exception when:

> rights in property taken in violation of international law are in issue and (1) that property or any other property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or (2) that property or any property exchanged for such property is owned and operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in commercial activity in the United States.

28 U.S.C. § 1605(a)(3). The plaintiffs rely on the second clause of the exception to confer jurisdiction because (1) rights in property were taken when the defendants prevented

the plaintiffs' use of radio frequencies to operate their cellular telephone system, (2) this taking violated international law by discriminating against aliens and failing to provide any compensation, and (3) ICE, a Costa Rican agency or instrumentality engaged in commercial activity in the U.S., now owns and operates a cellular network using the same radio frequencies that the plaintiffs once used. *See* Opp. at 24; First Am. Compl. at 13.

As a threshold matter, a claimant cannot complain that a "taking" or other economic injury has not been fairly compensated, and hence violates international law unless the claimant has first pursued and exhausted domestic remedies in the foreign state that is alleged to have caused the injury. *Greenpeace, Inc. (USA) v. State of France*, 946 F.Supp. 773, 783 (C.D.Cal.1996) (*citing Interhandel (Switz. v. U.S.)* 1959 I.C.J. 6, 26–27, 1959 WL 2 (1959)); *see Restatement (Third) of the Foreign Relations Law of the United States* § 713 cmt. f (*"Restatement"*). The requirement of exhaustion, however, does not apply when such a remedy is clearly inadequate or "when the claim is for injury for which the respondent state firmly denies responsibility." *McKesson Corp. v. Islamic Republic of Iran*, 1997 WL 361177, at * 15 n. 25 (D.D.C. June 23, 1997) (*quoting Restatement* § 713 cmt. f). In this case, the plaintiffs have not attempted to seek any claim for damages with the Costa Rican court system when the defendants prevented the plaintiffs from using radio frequencies to operate their cellular telephone system. Although the plaintiffs may have negotiated with high level officials from the Costa Rican government to continue their presence in the Costa Rican cellular services market, the plaintiffs are not excused from being required to exhaust local remedies before invoking the FSIA's "expropriation" exception. § 1605(a)(3). It cannot be reasonably interpreted that the Republic of Costa Rica firmly denied any responsibility for injuries the plaintiffs may have suffered when the parties failed to reach a commercial solution. *See Restatement* § 713 cmt. f. Additionally, there is no indication that the Costa Rican court system is not independent or that any efforts to pursue judicial remedies would be futile. Therefore, this exception is inapplicable to confer jurisdiction because a "taking" in violation of international law has not occurred. § 1605(a)(3).

A separate Order of Entry of Judgment accompanies this Memorandum Opinion.

### ORDER

In accordance with the Memorandum Opinion issued on the 23rd day of February, 1998, it this 23rd day of February, 1998,

**ORDERED** that the Defendants' Renewed Motion to Dismiss the First Amended Complaint in its Entirety be and is hereby **GRANTED;** and it is

**FURTHER ORDERED** that Defendants' Motion for Leave to File Discovery Materials be and is hereby **DENIED.**

**SO ORDERED.**